**EXHIBIT A**

## BURNS & LEVINSON LLP

125 SUMMER STREET BOSTO I, MA 02110
T 617.345.3000  F 617.345. .299
WWW.BURNSLEV.COM

MERTON E. THOMPSON
617.345.3697
MTHOMPSON@BURNSLEV.COM

BY FACSIMILE AND MAIL

January 10, 2005

Matthew Adler
Attorney
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799

Re:    *Sportvision, Inc. v. SportsMEDIA Technology Corp. N.D. Cal. C-04-3115*

Dear Matthew:

Pursuant to FRCP Rule 26(a)(2) Sportvision discloses its expert as to trademark matters, Jeffrey
M. Samuels.  Professor Samuels Expert Report is attached.

Truly,

Merton E. Thompson
Attorney

Enclosure
MET

00495604

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

SPORTVISION, INC.,              )
                               )
        Plaintiff,             )
                               )
            v.                 )
                               )   Case No.C-04-3115JW
SPORTSMEDIA TECHNOLOGY         )
CORPORATION,                   )
                               )
        Defendant.             )
                               )

## EXPERT REPORT OF JEFFREY M. SAMUELS

1. This constitutes an Expert Report prepared by Jeffrey M. Samuels pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) in connection with the above-referenced matter. I have been retained as an expert in the above-captioned case by counsel for Plaintiff Sportvision, Inc. to offer expert opinions regarding various trademark issues raised in the instant matter. The opinions set forth herein are preliminary in nature and may be supplemented in the future based on additional information provided to me.

2. In reaching my opinions I have had the benefit of reviewing the materials identified in Exhibit A to this report.

3. I have been involved in the field of intellectual property law, with a primary concentration in trademark and unfair competition law, since 1976. Attached as Exhibit B to my report is a copy of the most current version of my curriculum vitae (including a list of my publications during the past

ten (10) years), which further describes my professional experience and qualifications. I note that, from November 1987 until January 1993, I was an Assistant Commissioner of Patents and Trademarks -- the head of the trademark division of the U.S. Patent and Trademark Office (PTO). As such, I was actively involved in, and responsible for, the PTO's trademark operations and all facets of the administration of the federal registration system, including implementation of the provisions of the Trademark Law Revision Act of 1988, and established policies and procedures relating to the federal registration system. My responsibilities also included general oversight and management of the operation of the Trademark Trial and Appeal Board. I served as a statutory member of the Board and participated in and authored several significant opinions.

I am currently the David L. Brennan Professor of Law and Director of the Center for Intellectual Property Law and Technology at the University of Akron School of Law. My teaching responsibilities include courses in trademark and unfair competition law, trademark prosecution, international intellectual property, and introduction to intellectual property. Prior to joining the faculty at the University of Akron School of Law, I served as an adjunct professor at the George Washington University School of Law and George Mason University School of Law.

I have authored or co-authored over thirty articles in the

2

area of intellectual property law, am the editor of the publication "Patent, Trademark, and Copyright Laws," and have made numerous presentations to professional, educational, and other organizations (including the House Judiciary Subcommittee on Courts and Intellectual Property) on trademark and other intellectual property law issues. I was the Associate Editor of the well-known treatise <u>Trademark Protection and Practice</u> by Jerome Gilson (Matthew Bender & Co.) from 1993 to December 1998. I also serve as a panelist under the ICANN (Internet Corporation of Assigned Names and Numbers) Uniform Domain Name Dispute Resolution Policy and as an arbitrator/mediator of trademark and related unfair competition matters under the programs sponsored by The International Trademark Association/Center for Public Resources and the U.S. District Court for the Northern District of Ohio. In July 2003, U.S. Secretary of Commerce Donald L. Evans appointed me to a three-year term as chair of the Trademark Public Advisory Committee of the United States Patent and Trademark Office.

4. Attached as Exhibit C to my report is a list of the cases in which I have either testified at trial or been deposed during the past four (4) years.

5. I will be compensated at the rate of $450 per hour. My compensation does not depend upon the outcome of this litigation, and I have no financial interest in the outcome

3

of this litigation.

6. The complaint in this matter alleges, in part, that Defendant SportsMedia's use of the color "yellow" for a virtual line that appears during the TV broadcast of a football game infringes upon Plaintiff's trademark rights, in violation of the federal Trademark ("Lanham") Act and state and common law.

7. The evidence establishes that Plaintiff owns a federal trademark registration (U.S. Registration No. 2,622,916) for the "color yellow used on a virtual line that appears as an image on a football field during a television or video broadcast of a football game," as used in connection with the following service: "enhancing video images for others by adding an electronic visual display or graphic, namely, a line, which denotes a location of interest in an image, a video or a broadcast of a football game."

8. It is clear that a single color, as applied to goods and/or services, may be protectable as a trademark and registered with the PTO. Resolving a conflict among the courts of appeals, the Supreme Court of the United States held in 1995 that color alone may serve as a trademark, provided the color has acquired secondary meaning and is nonfunctional. See *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159 (1995). Indeed, a number of well known marks consist of a single color. For example, Owens-Corning Fiberglas owns a trademark registration (No. 2,090,588) for

4

the color "pink," as used on foam insulation for use in building and construction, and United Parcel Service owns a registration (No. 2,131,693) for the color "brown," as used on its trucks.

9. The Court, in *Qualitex*, noted that "[w]e cannot find in the basic objectives of trademark law any obvious theoretical objection to the use of color alone as a trademark, where that color has attained `secondary meaning' and therefore identifies and distinguishes a particular brand (and thus indicates its `source')." The Court further held that where color "is not essential to a product's use or purpose and does not affect cost or quality … the doctrine of `functionality' does not create an absolute bar to the use of color alone as a mark."

10. Thus, before securing issuance of its registration for the color "yellow," Plaintiff was required to, and did, present evidence to the Trademark Examining Attorney that the color "yellow" identifies and distinguishes the services in connection with which it is used and is not functional. As suggested in "Plaintiff's Memorandum of Law In Support of its Motion for Preliminary Injunction," the Trademark Attorney responsible for examining Plaintiff's color "yellow" application, Ms. Teresa Rupp, possesses a great deal of experience and expertise with respect to the registrability of single color marks. Indeed, during my tenure at the PTO,

5

Ms. Rupp was one of a very select group of examiners responsible for reviewing all such applications.

11. The Defendant, in its Answer, contends, in part, that Plaintiff's use of the color "yellow" is not subject to trademark protection because it does not possess secondary meaning and is functional. Before each addressing each of these assertions, I note that the issuance by the PTO of a registration covering Plaintiff's color "yellow" mark creates a statutory presumption that Plaintiff is the owner of the mark, that the mark is valid (i.e., the mark has secondary meaning and is nonfunctional), and that Plaintiff has the exclusive right to use the registered mark in commerce in connection with the service specified in the registration. See 15 U.S.C. §1057(b).

12. A mark is deemed to possess secondary meaning and, thus, to be protectable if a significant portion of the relevant consuming public associates the mark with a particular, if unknown, source, as opposed to a particular product or service. That is, the relevant consuming public does not have to know, for example, that TIDE® detergent is made by Procter & Gamble; they need only associate the mark with a particular source. SportsMedia contends that Plaintiff's color "yellow" mark lacks secondary meaning because there is no evidence that the color "yellow" is associated with Sportsvision.

13. Based upon my review of various documents, there is evidence that the color "yellow" identifies and distinguishes

6

a source, i.e., Sportvision and, thus, possesses the requisite secondary meaning.  For example, in its March 26, 2001, response to the PTO's Office action refusing registration, Plaintiff noted that its color "yellow" mark has been the subject of much public exposure in the media. Exhibit C to the response contains over 80 articles, many, if not most, of which refer to Plaintiff's virtual line video enhancement services in conjunction with the color "yellow." Story No.35, for instance, states as follows: "In a multi-year deal, Sportvision will provide the 1st & Ten technology, often simply called `the yellow first down line,' on six NFL and college games every weekend." Similarly, Story No. 39 notes that "Last year, ESPN introduced Sportvision's Emmy-nominated `1st & Ten' technology – the popular `yellow line' which electronically displays a first down line – on ESPN's Sunday Night Football telecasts."  These stories, as well as others, support a determination that the color "yellow" is associated with Plaintiff's service.  Sportvision's substantially exclusive and continuous use of the "yellow" line since September 27, 1998, is also supportive of a determination of secondary meaning.

14. It is important to note that many marks may serve a dual function, that is, identify both source as well as product. The well known COCA-COLA® mark, for example, identifies both the source of the drink as well as the drink itself. Thus,

7

the fact that the color "yellow," as used in connection with Plaintiff's service, may be associated with certain functions and/or uses, does not compel a determination that the color "yellow" is not protectable.

15. With regard to the Defendant's functionality argument, I note that, in view of the fact that Sportvision's color "yellow" is the subject of a federal trademark registration, the Defendant bears the burden of proving that the color "yellow" is functional. The Defendant contends that the color "yellow" is functional because it is the easiest to see. As noted above, a mark is functional if it is essential to a product's use or purpose and does not affect cost or quality. The availability of alternative colors is a relevant consideration with respect to an assertion of aesthetic functionality.

16. In his declaration in support of Plaintiff's motion for preliminary injunction, Plaintiff's chief executive officer, William F. Squadron, declared that "there is no significance of any particular color for a virtual first down line except that the line should not be green or white…. The color yellow is no more special or significant than any other color." See Squadron Declaration, ¶5.

17. Story No. 33 of Exhibit C to Plaintiff's March 26, 2001, response to the PTO Office action indicates that the color of the line can be any color the producer chooses. Other evidence indicates that a third-party, PVI, uses the color

8

"orange" for its first-down line. Indeed, in an August 2, 2004 email from Defendant's president Gerard J. Hall, Mr. Hall indicated that the Defendant recommends the use of an "orange" line "as this is the color of the first down markers held by officials on the sidelines; however, SportsMedia can make the line any color you wish." See Exhibit B to Declaration of Gerard J. Hall in Opposition to Plaintiff's Motion for a Preliminary Injunction. I further understand from Plaintiff's counsel that Plaintiff has, in the past, used "pink" and "red" lines and that, this season, sometimes uses the color "blue" to indicate the line of scrimmage.

18. It thus appears that Plaintiff's competitors, including SportsMedia, would not be placed at a significant non-reputation-related disadvantage if required to use a color other than "yellow" to indicate a first-down marker on a football field.

19. With respect to the issue of likelihood of confusion, it is clear that most of the so-called *Sleekcraft* factors support a determination that such confusion exists. One of the most important factors bearing on the issue of likelihood of confusion is the strength of plaintiff's mark. Here, there is evidence that Plaintiff's color "yellow" mark has achieved much acclaim among the viewing public. It is also clear that both parties use the same color "yellow" mark on identical services, which travel in the same channels of

9

trade. The fact that the parties use other marks in connection with their respective services, i.e., "1st & Ten and Smart®-line, does not, in my opinion, reduce the likelihood of confusion. These additional marks are not so well known or distinctive as to reduce the similarity between the parties' marks when viewed in their entireties. While the parties agree that the degree of sophistication of the relevant purchasing public is high – a fact that cuts against a finding of likelihood of confusion – the law recognizes that even sophisticated purchasers may be confused, particularly where the marks and goods and/or services in issue are identical. Sportvision could be damaged if a potential purchaser viewed an infringing offering and assumed it was Plaintiff's. Moreover, as noted by Plaintiff, TV broadcasters are highly influenced by viewer demand. Viewer demand for the "yellow" line marker apparently is extremely high, reflecting the mark's strength.

20. The opinions stated in this written report are based on my education, background, knowledge and experience in trademark law and at the PTO and my review of the information currently available to me. I plan to continue my study of the matters discussed herein, including a review of documents that may yet be produced, court papers, reports of other experts, rebuttal reports of experts, and testimony. Accordingly, I reserve the right to expand upon or supplement or modify my opinions as my studies continue.

10

I declare and state under penalty of perjury that the entirety of this Expert Report is true and correct to the best of my knowledge and understanding.

Date: 1/7/05

Jeffrey M. Samuels

11

# EXHIBIT A

EXHIBIT A

LIST OF DOCUMENTS REVIEWED

1.  First Amended Verified Complaint

2.  Answer and Counterclaims in Response to First Amended Verified Complaint

3.  Plaintiff's Memorandum of Law in Support of its Motion for Preliminary Injunction and Supporting Declarations of Henry Adams and William F. Squadron

4.  SportsMedia Technology Corporation's Opposition to Sportsvision, Inc.'s Motion for Preliminary Injunction and Supporting Declaration of Gerald J.Hall

5.  File Wrapper relating to Plaintiff's U.S. Trademark Registration No. 2,622,916

# EXHIBIT B

# EXHIBIT B

## JEFFREY M. SAMUELS

**Phone (330) 972-7898 Fax (330) 258-2343 E-mail: JeffreyMSamuels@aol.com**

## EMPLOYMENT

**David L. Brennan Professor of Law and Director, Center for Intellectual Property Law and Technology,** University of Akron School of Law, Akron, Ohio. August 1998 to present. Serve as primary contact between law school and intellectual property law bar and community and Center Advisory Council. Develop and implement curriculum, including proposed Master of Laws in Intellectual Property. Coordinate and organize annual intellectual property law symposium, continuing legal education and guest lectures. Courses taught: Trademark and Unfair Competition Law, Introduction to Intellectual Property Law, International Intellectual Property Law, Current Issues in Intellectual Property Law, Patent Law. Member, Curriculum, Admissions and Library Committees.

**Chair, Trademark Public Advisory Committee of the United States Patent and Trademark Office** (USPTO), three year term commencing July 2003. Chair committee and advise the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office on matters relating to the policies, goals, performance, budget, and user fees of the trademark operation.

**Jeffrey M. Samuels, Esq.** January 1999 – present; **Law Office of Jeffrey M. Samuels, P.C.,** June 1996 – August 1998. Practice trademark and related unfair competition law, including expert witnessing, consulting, alternative dispute resolution, prosecution and litigation. Government relations manager for the International Trademark Association, November 1994-July 1997 (directed the introduction, consideration and enactment of "The Federal Trademark Dilution Act of 1995"). Panelist: ICANN's Uniform Domain Name Resolution Policy; International Trademark Association and the Center for Public Resources' ADR Program; ADR Neutrals for the U.S. District Court for the Northern District of Ohio; National Arbitration Forum's Intellectual Property Arbitration Panel.

**Professorial Lecturer in Law,** 1993 – 1998.  The George Washington University Law School. 1998. George Mason University School of Law. Taught trademark law and provided support for the program. Guest lecturer on international intellectual property law, intellectual property law legislation, ongoing. Lecturer Intellectual Property law program for Taiwanese attorneys and government officials.

**Partner,** Spencer & Frank, March 1993 - June 1996.  Practiced trademark and related unfair competition law and copyright law, including prosecution, expert witnessing, consulting and litigation.

**Assistant Commissioner of Patents and Trademarks,** October 1987 - January 1993. Head of the trademark division of the U.S. Patent and Trademark Office.

Established and implemented policy, procedures and strategy on all facets of trademark operations: legal and legislative issues, international cooperation, external relations, rulemaking, budget, personnel, automation, labor/management issues, statutory Member, Trademark Trial and Appeal Board (TTAB). May 1992 - January 1993.  Assigned additional responsibilities to oversee activities of the Offices of the Assistant Commissioner for Information Systems and the Assistant Commissioner for Public Services and Administration and to serve as principal liaison to the Department of Commerce's Office of Inspector

General.

**Acting Assistant Secretary of Commerce and Commissioner of Patents and Trademarks**, November 1989 - March 1990 and as needed 1987 - 1993.

Responsible for overall management of the U.S. Patent and Trademark Office, including congressional and other external relations.

## SIGNIFICANT ACCOMPLISHMENTS IN GOVERNMENT SERVICE

- Implemented "Trademark Law Revision Act of 1988."
- Headed U.S. delegation to the World Intellectual Property Organization's Working Group meetings on implementation of the Madrid Protocol on the International Registration of Marks and on Harmonization of the Laws Relating to Trademarks.
- Implemented quality improvement initiatives, including creation of Office of Trademark Quality Review and total quality management program.
- Author of major TTAB policy decisions relating to amendments to identifications of goods and services and examiner reconsideration.

**Managing Editor**, May 1982 - October 1987; **Legal Editor**, August 1976 - April 1982. BNA's Patent, Trademark & Copyright Journal; Founder, World Intellectual Property Report; **Chair**, Professional Conferences; The Bureau of National Affairs, Inc.

## EDUCATION, BAR MEMBERSHIPS AND ORGANIZATIONS

Albany Law School, Doctor of Jurisprudence, May 1975.

Colgate University, Bachelor of Arts with Honors, May 1972.

Ohio State Bar (1999); District of Columbia Bar (1978); Virginia State Bar (1977); New York State Bar (1976); U.S. Court of Appeals for the Federal Circuit (1996); U.S. District Court for the Eastern District of Virginia (1997).

American Intellectual Property Law Association, Chair, Committee on Trademark Legislation 1999-2000; Vice-Chair, Committee on Trademark and Trade Identity Unfair Competition Law 1994-1995; Chair, Trademark Office Subcommittee 1997-2000; Staff Editor, AIPLA Quarterly Journal 1996-2000, authored congressional testimony on legislation to amend federal dilution statute 2002.

The International Trademark Association, Government Relations Manager 1995-1997; Member, Brief Amicus Committee 1997-1999, Member, Meetings Committee 2000-2002.

American Bar Association Section of Intellectual Property Law, Chair, Federal Trademark Legislation Committee 1994-1995; Chair, Sovereign Immunity Subcommittee, 2002-2004; Chair, Intent-to-Use Subcommittee 1997-98; Chair, Trade Dress Subcommittee 1998-99.

Cleveland Intellectual Property Law Association, President-Elect 2003-2004; Program Chair 1999-2002; Board Member, 2001-2002.

Advisory Board Member, BNA's Patent, Trademark & Copyright Journal.

Advisory Board Member, World Intellectual Property Report.

## CONGRESSIONAL TESTIMONY

House Judiciary Subcommittee on Courts and Intellectual Property:
"Abrogation of States Eleventh Amendment Immunity From Patent Infringement," February 1990. Cited by the Supreme Court of the United States in Florida Prepaid v. College Savings Bank, 527 U.S. 627, n.6 at 641 (1999).
"Computers and Intellectual Property," March 1990.
"Copyright Protection for Architectural Works," March 1990.
"Madrid Protocol Implementation Act of 1993," May 1993.
"Federal Trademark Dilution Act of 1995," July 1995.
"H.R. 3163, The 'Trade Dress Protection Act'," February 1998.
"Hearing on Dilution and Anticounterfeiting Bills," May 1998.

House Appropriations Subcommittee on Commerce, State, Justice, the Judiciary and Related Agencies:
"1991 Budget Request of U.S. Patent and Trademark Office," February 1990.

## PUBLICATIONS (Excluding Proceedings and Course Books)

"Patent Trademark and Copyright Laws" (BNA: 1983, 1984, 1985, 1987, 1989, 1991, 1992 Supp., 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004).

"US Finally Joins Madrid Protocol," JAMS (Journal of the Academy of Marketing Science, Vol. 32, pp. 104-5 (Winter 2004), co-author.

"Key Trademark Decisions Relating to PTO Practice," Journal of the Patent and Trademark Office Society, in press co-author.

"Internet Domain Names: The Uniform Dispute Resolution Process," American Business Law Journal, Vol. 40, No. 4, Summer 2003, pp. 885-904, co-author.

"Notable Court Decisions Affecting PTO Trademark Practice, " Journal of the Patent and Trademark Office Society, Vol. 85, No. 3, Mar. 2003, pp. 191-218, co-author.

"Trademark Decisions Affecting PTO Practice in 2001," Journal of the Patent and Trademark Office Society, Vol. 84, No. 4, April 2002, pp. 310-330, co-author, reprinted in Japanese version of AIPPI Journal, 2002; translated into Japanese and reprinted Journal of the Japanese Group A.I.P.P.I, Vol. 47, No. 9, pp. 18-30.

"Recent Court Opinions Affecting USPTO Practice: The Year in Review, " Journal of the Patent and Trademark Office Society, Vol. 83, No.9, Sept. 2001, pp. 619-639, co-author.

"Trade Dress Undressed: Wal-Mart v. Samara, " AIPLA Quarterly Journal, Vol. 29, No. 1, Winter 2001, pp. 43-63, co-author, Selected for reprinting in Intellectual Property Law Review 2002 (West Publishing Co.).

"Supreme Court Makes Protection of Product Design Trade Dress More Difficult," Journal of the Academy of Marketing Science, Vol.29 No. 1, Winter 2001, pp. 108-109, co-author.

"Trade Dress Protection: The Issue of Distinctiveness and Potential Conflicts," Northern Kentucky Law Review, Symposium Issue – Intellectual Property Law: Issues in the New Millennium, Vol. 27 No. 5, Fall 2000, pp. 1041-54.

"Highlights of Opinions Affecting PTO Practice," Journal of the Patent and Trademark Office Society, Vol. 82, No. 5, May 2000, pp. 311-335, co-author.

Trademark Registration Practice by James E. Hawes (West).  Primary contributor to 1999 and 2000 updates.

"Principal Opinions Affecting PTO Trademark Practice," Journal of the Patent and Trademark Office Society, Vol. 82 No. 4, April 1999, pp. 281-302, co-author.

"The Madrid Protocol and Trademark Harmonization," in Kenneth L. Port et al., Cases and Materials in International Intellectual Property, Carolina Academic Press 1999, forthcoming.

"Significant Trademark Decisions," Journal of the Patent & Trademark Office Society, Vol. 80 No. 7, July 1998, pp. 453-468, co-author.

"Noteworthy PTO Trademark Decisions," Journal of the Patent & Trademark Office Society, Vol. 80 No. 4, April 1998, pp. 231-240, co-author.

Trademark Protection and Practice by Jerome Gilson (Matthew Bender & Co.).  Associate Editor of treatise, 1993–1998.

Trade Marks, Trade Names and Unfair Competition, World Law and Practice by John Olsen and Spyros Maniatis (FT Law and Tax, London).  Contributor of section of treatise relating to U.S. trademark law and practice, 1994-present.

"Formulating an Effective Association Intellectual Property Program," ASAE Association Law and Policy and ASAE Law Compendium, co-author, 1997.

"Recent Developments in Trademark Law and Practice," Journal of the Patent & Trademark Office Society, Vol. 79, March 1997, pp. 181-190, co-author.

"The Trademark Office as a Government Corporation," Fordham Intellectual Property, Media & Entertainment Law Journal, Vol. 7, Autumn 1996, pp. 137-145, co-author. Cited in Senate Report 105-42 on the "Omnibus Patent Act of 1997," 105th Congress, First Session, July 1, 1997, p.45.

"Recordal of Fastener Insignia Under the Fastener Quality Act," American Fastener Journal, Vol. 13, No. 6, Nov./Dec. 1996, pp. 4, 10, co-author, reprinted World Intellectual Property Report, Vol. 11, pp. 24-25, January 1997, co-author.

"Color Trademarks: Protection Under U.S. Law," Journal of Public Policy and Marketing, Vol. 15, No. 2, Fall 1996, pp. 305-307, co-author.

"Famous Marks Now Federally Protected Against Dilution," Journal of Public Policy and Marketing, Vol. 15, No. 2, Fall 1996, pp. 306-310, co-author.

"Protection For Color Under U.S. Trademark Law," AIPLA Quarterly Journal, Vol. 23, No. 1, Winter 1995, pp. 129-152, co-author.

"The Community Trademark," World Intellectual Property Report, April 1996, pp. 114-116, co-author.

"The Madrid Protocol to Enter into Force April 1," World Intellectual Property Report, March 1996, pp. 86-87, co-author.

"The Changing Landscape of International Trademark Law," George Washington Journal of International Law and Economics, Vol. 27, No. 2 & 3, 1994, pp. 433-455, co-author. Excerpted in Goldstein, Copyright, Patent and Related State Doctrines: Cases and Materials on Intellectual Property Law (Foundation Press, 1999), pp. 1045-1048; excerpted in Dinwoodie et al. International Intellectual Property Law and Policy (Lexis, 2001); excepted in Dinwoodie et al. International and Comparative Trademark and Unfair Competition Law (Lexis, 2002 forthcoming). Selected as finalist for the Ladas Award sponsored by the Brand Names Education Foundation.

"The Madrid Protocol From the U.S. Perspective," Journal of Japan Trademark Association," Vol. 21, 1994, pp. 23-30 (in Japanese), Proceeding, pp. 99-113 (in English).

"The Madrid Protocol and Harmonization of Trademark Laws," Canadian Intellectual Property Review, Vol. 10, No. 3, May 1994, pp. 667-668.

"European Community Trademark: What Every U.S. Owner and Practitioner Should Know," Trademarks America, June 1994, pp. 9-11.

"Patent and Trademark Office Practice," The Journal of Proprietary Rights, (Part I) Vol. 5, No. 9, September 1993; (Part II) Vol. 5, No. 10, October 1993; (Part III) Vol. 5, No. 11, November 1993; (Part IV) Vol. 5, No. 12, December 1993.

"House Panel Holds Hearing on Madrid Protocol," Dinwoodey Center Journal, The George Washington University National Law Center, September 1993, pp. 3-4.

"U.S. Perspective on the Madrid Protocol," European Intellectual Property Review, Vol. 15, November 1993, pp. 418-25, co-author.

"Reflections on Management of the PTO," Journal of the Patent and Trademark Office Society, April 1993, pp. 247-256, co-author.

"Color Trademarks: Shades of Confusion," The Trademark Reporter, Vol. 83, August 1993, pp. 554-570, co-author.

"Letter To The Editor" [regarding "The Madrid Protocol - Some Reflections"], The Trademark Reporter, Vol. 82, September - October 1992, pp. 810-813.

"Questions and Answers on Intent to Use," Patent and Trademark Office Society, Vol. 71, No. 8,

August 1989, pp. 585-599, co-author.

"Analysis of Trademark Law Revision Act of 1988," World Intellectual Property Report, February 1989, pp. 34-35.

"New Developments in Copyright Protection of Computer Software," International Journal of Legal Information, October - December 1987, pp. 195-200, co-author.

"Semiconductor Chip Protection Act of 1984: An Analytical Commentary," American Business Law Journal, Winter 1986, pp. 601-616, co-author.

"The Patentability of Computer-Related Inventions," Corporation Law Review, Spring 1983, pp. 144-155, co-author.

"Contributory Infringement: Relief For the Patent Owner," Corporation Law Review, Fall 1981, pp. 332-345, co-author.

## SELECTED PRESENTATIONS

Akron Kiwanis Club, January 2002.
Agency for International Development, July 1998.
ALI-ABA Video on the Trademark Law Revision Act, December 1989.
All Ohio Intellectual Property Law Conference, September 1995, September 2000; September 2003.
American Bar Association Section on Intellectual Property Law, March 1988, April 1994, June 1999, April 2002; March 2003, June 2003.
American Intellectual Property Law Association Trademark and Unfair Competition Law Committee, October 1988; January and October 1989; October 1990; January 1993, May 1996, January 1998, April 1999.
American Intellectual Property Law Association, May 1997, October 1999, October 2000.
American Law Institute - American Bar Association Continuing Legal Education Spring Program, April 1992; April 1993.
American Society of Association Executives, October 1997.
Annual Meeting of The United States Trademark Association, May 1988; May 1991; May 1992.
Arter & Hatten, September 1997.
Asian Pacific Legal Institute, July 1996; July 1997.
Association of the Bar of the City of New York Section on Unfair Competition, March 1990.
Bar Association of District of Columbia Patent, Trademark & Copyright Section, December 1988; February 1993.
Bar Association of Metropolitan St. Louis, April 2002.
BNA's 12th Annual Patent Law Conference, November 1988.
Brooklyn Law School Symposium for Business Lawyers, February 1989.
Carolina Patent, Trademark and Copyright Law Association, April 1989; November 1989.
Chicago Bar Association, June 1988; May 1989; June 1990; May 1991; May 1992.
Civic Forum of the Air, July 2003.
Cleveland Intellectual Property Law Association, February 1993, November 1998, November 1999, November 2001, January 2003.
European Community Trademark Conference, March 1995.
Executive Management Institute, January 1990.
Federal Circuit Bar Association, May 1996.

Federal Judicial Center Russian Judges Conference, November 1995.

Florida State Bar Intellectual Property Law Section, November 1999, November 2002.

Forum on the Trademark Law Revision Act of 1988, The United States Trademark Association, February; March; June 1989.

George Mason University School of Law Intellectual Property Law Program, March 1998, March 1999, March 2000.

George Washington University Intellectual Property Law Program, February 1993, November 1994; March 1995, October 1995, March 1996, October 1997, March 1998, October 1998, March 1999, October 2000, October 2001.

Government Patent Lawyers Association, March 1989.

Indiana Patent Law Association, July 1989.

Insight Intellectual Property Program, November 1997, April 1999, November 1999.

Intellectual Property Owners/PTO Day Program, December 1989; December 1990; December 1991; December 1992, December 1996, December 1997, December 1998, December 1999, December 2000, December 2002, December 2003..

Intellectual Property Owners Annual Meeting, November 1999.

Intellectual Property Section of the State Bar of California, October 1988; November 1990; September 1992, April 1994, October 1994.

International Intellectual Property Alliance, March 2003.

International Trademark Association Annual Meeting, May 2002; Trademark Basics Program, December 2002.

International Trademark Association Forum, March 1995.

Iowa Intellectual Property Law Association, October 1990; September 2003.

Japan Intellectual Property Association, October 1995.

Japanese Trademark Association, February 1994, June 1995, September 1996.

Kent State University Business Students, November 2001.

Lawcast Audiotape on Federal Trademark Dilution Act of 1995, January 1996.

Lexis/Nexis Program on Trademark Law, April 2003.

Los Angeles Intellectual Property Law Association, September 1992, June 1994.

Minnesota Patent Law Association, September 1989.

National Council of Intellectual Property Law Associations, October 1988; October 1989; April 1992; September 1998, September 2000.

New Jersey Intellectual Property Law Association, October 1995.

New York Patent, Trademark and Copyright Law Association, November 1989; February 1990; November 1990, March 1996.

Northern Virginia Chapter of Federal Bar Association, September 1988.

International Intellectual Property Society, March 2003.

Oliff & Berridge CLE Seminar, April 1995, May 1998.

Orange County (California) Patent Law Association, October 1988.

Patent and Trademark Office Trademark Examiners, January 1999, February 2000.

Patent and Trademark Office Program on Patent Law Reform, January 1999.

Patent and Trademark Law Institute of Canada, October 1993.

Patent and Trademark Office Society, February 1993.

Patent Club of Washington and Maryland Patent Law Association, April 1989.

Patent Depository Library Conference, May 1990.

Patent, Trademark and Copyright Law Section of State Bar of Georgia, June 1989.

Patent, Trademark and Copyright Section of District of Columbia Bar Association, April 1989.

Patent, Trademark and Copyright Section of Washington State Bar Association, April 1988.

Philadelphia Public Library Bicentennial Anniversary of First Patent and Copyright Laws, July 1990.

Philadelphia Public Television, July 1990.
Pittsburgh Intellectual Property Law Association, October 1994.
Practising Law Institute, June 1991; June 1992; July 1992; June 1993; July 1993, April 1994, July 1994,
     July 1995.
San Francisco Intellectual Property Law Association, May 1990, September 1994.
State Bar of Wisconsin, January 1990.
Taiwan Economic and Cultural Office, August 1997.
Trade-Mark Agents Institute, London, March 1990; March 1993.
Trademark and Copyright Committee of Pharmaceutical Manufacturers Association, March 1989.
Trademark Law for Trade Associations, October 1989.
UCLA Law School, September 1992.
The United States Trademark Association Forum on Trademark Basics, September 1991.
The United States Trademark Association Pacific Rim Workshop, September 1992.
The United States Trademark Association Paralegal Forum, September 1988.
University of Akron Annual Intellectual Property Conference, March 1999, March 2000, March 2002.
University of Akron School of Engineering, November 1998.
University of Strasbourg, France, Center for Industrial Property Studies, May 2003.
Virginia State Bar Intellectual Property Law Section, February 1993, June 1994.
Voice of America, June 1989.
Washington State and Oregon Patent Law Associations, March 1992, April 1998.
Worldnet TV, June 1988.
Youngstown, Ohio Inventors Group, October 1999.

02/20/04

# EXHIBIT C

### EXHIBIT C

<u>LIST OF CASES IN WHICH I HAVE BEEN DEPOSED OR TESTIFIED
AT TRIAL DURING THE PAST FOUR YEARS</u>

1. <u>Harvard Pilgrim Health Care, Inc. v. President and Fellows of Harvard College</u> (D. Mass.) Civil Action No. 00cv-10491-RCL.

2. <u>The Swatch Group (U.S.) Inc. v. Movado Corp.</u> (S.D.N.Y.) Civil Action No. 01 Civ 0286 .

3. <u>Purebred Co., Inc. v. Star-Kist Foods, Inc.</u> (D. Colo.) Civil Action No. 00 D 665.

4. <u>AM General Corp. v. DaimlerChrysler Corp.</u> (N.D. Ind.) Civil Action No. 3:01CV134RM .

5. <u>Clark Capital Management Group, Inc. v. Annuity Investors Life Insurance Co.</u> (E.D. Pa) Civil Action No. 00-CV-1959.

6. <u>Todhunter International, Inc. v. Fabrica de Licores y Alcoholes de Antoquia</u> (S.D. Fla.) Civil Action No. 01-3582 .

7. <u>The Dream Merchant Company, LLC v. Cirque, Inc.</u> (D. Nev.) Civil Action No. CV-S-99-1767-LDG-RLH.

8. <u>Sears, Roebuck & Co. v. Menard's Inc.</u> (N.D. Ill.) Civil Action No.01-9843.

9. <u>Inverizon International, Inc. v. Verizon Communications, et al.</u> (Mo. Cir. Ct. Case No. 002-07999).

10. <u>The Hoover Co. v. Oreck Holdings LLC</u> (N.D. Ohio Case No. 5:02 CV 548).

11. <u>Quantum Capital Corp. et al. v. MBNA America Bank, N.A.</u> (N.D. Ga. Case No. 02-CV-0370).

12. <u>United States Polo Association, et al. v. PRL USA Holdings, Inc. et al.</u> (Arbitration No. 50 T 133 00578 03).

13. <u>3M Co. v. Intertape Polymer Group Inc., et al.</u> (D. Minn. No. 03-2651).

## PROOF OF SERVICE

I am employed in the County of Suffolk, my business address is Burns & Levinson LLP, 125 Summer Street, Boston, Massachusetts 02110. I am over the age of 18 and not a party to the foregoing action.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for personal delivery, for mailing with United States Postal Service, for facsimile, and for overnight delivery by Federal Express, Express Mail, or other overnight service.

On January 10, 2005, I caused a copy of the following document(s):

**EXPERT REPORT OF JEFFREY M. SAMUELS** to be served on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, and addressed as follows:

Matthew H. Adler, Esq.                    Attorneys for Plaintiff,
Pepper Hamilton LLP                       SPORTSMEDIA TECHNOLOGY
3000 Two Logan Square                     CORPORATION.
Eighteenth and Arch Streets
Philadelphia, PA 19103
Telephone: 215-981-4802
Facsimile:  215-981-4750

|   | | |
|---|---|---|
| **MAIL:** | | Such correspondence was deposited, postage fully paid, with the United States Postal Service on the same day in the ordinary course of business. |
| **PERSONAL:** | | Such envelope was delivered by hand to the offices of the addressee. |
| X **FACSIMILE:** | | Such document was faxed to the facsimile transmission machine with the facsimile machine number stated above. Upon completion of the transmission, the transmitting machine issued a transmission report showing the transmission was complete and without error. |
| **FEDERAL EXPRESS:** | | Such correspondence was deposited on the same day in the ordinary course of business with a facility regularly maintained by Federal Express. |
| **EXPRESS MAIL:** | | Such correspondence was deposited on the same day in the ordinary course of business with a facility regularly maintained by the United States Postal Service. |

01/10/05  18:33 FAX 6173453299 _____ BURNS LEVINSON LLP                    ☒028

**OVERNIGHT
DELIVERY:**   Such correspondence was given on the same day in the ordinary course of business to an authorized courier or a driver authorized by that courier to receive documents.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the above is true and correct. Executed on January 10, 2005, at Boston.

/s/ Merton E. Thompson
(Name)

2